# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**
        Plaintiff,

   v.                                                                           Case No. 18-C-0504

**RAM K. AGRAWAL,**
        Defendant.

## ORDER

Through this action, the United States of America seeks to enforce civil penalties against Ram Agrawal for his alleged non-willful failure to timely report his financial interest in or authority over certain foreign bank accounts. Agrawal has represented himself throughout this litigation. Now before me is the United States' motion for summary judgment.

### I.    BACKGROUND

Ram Agrawal was born in India and moved to the United States in or around 1970. He is a United States citizen. He completed his graduate education in the United States, and then worked in the United States as a geophysicist and later as a math instructor at the Milwaukee Area Technical College. He received an inheritance from his parents in the form of CDs that were held in India. In or around 2002, Agrawal renewed or purchased new CDs at the State Bank of India. Some of these new CDs matured in 2004 and the remainder matured in 2006.

In September 2004, Agrawal and his wife jointly opened an account at UBS, a Swiss investment bank. Agrawal used money from CDs in India that were maturing to fund the UBS account. Agrawal directed UBS to invest the money in non-US SEC

funds, which would be non-taxable. The maximum value of the UBS account was $999,350 in 2006; $967,129 in 2007; $930,531 in 2008; and $671,425 in 2009. In 2009, UBS notified Agrawal that it intended to close the account. In 2010, Agrawal closed the account and received a check from UBS for $671,424.65, which was the remaining account balance.

Under Treasury Department regulations in effect during the period when Agrawal held the UBS account, he was required to report the account to the Treasury Department every year. 31 C.F.R. §§ 103.24, 103.27 (2009). The regulations required him to use a form prescribed by the Secretary of the Treasury: Form TD F 90-22.1, Report of Foreign Bank and Financial Account, commonly referred to as an "FBAR." However, for each of years 2006, 2007, 2008, and 2009, Agrawal failed to submit timely FBARs with respect to the UBS account. He also failed to report the State Bank of India CDs, the UBS account, or the gain or loss from the UBS account on his tax returns for those years.

At his deposition, Agrawal testified that he prepared his own tax returns in 2006 and 2007, but relied on CPAs to prepare his tax returns in 2008 and 2009. He testified that he did not tell the CPAs of the existence of the UBS account. Regarding the 2008 tax return preparation, Agrawal testified as follows:

> Q. Did [the CPA] ask you whether you had a foreign financial account?
> A. I said no.
> Q. You told him no?
> A. Yes.
> Q. But at this time you still had the UBS account, correct?
> A. Yes.
> Q. Why did you tell [the CPA] no?

2

|   | A. | Because again, the word of [the UBS representative] that these—this account is not—non-taxable in the U.S. |
|---|---|---|
| … | | |
|   | Q. | You didn't tell [the CPA] that you had a UBS account but were told that it was non-taxable and didn't need to be reported? |
|   | A. | I didn't tell him. |
|   | Q. | Okay. Why not? |
|   | A. | Because when I trust somebody, like [the UBS representative], I didn't tell him. |

ECF # 32-17 at 65-66. Regarding the 2009 tax return, Agrawal testified as follows:

|   | Q: | Did you review the Form 1040 of your tax return to 2009 with [the CPA] before you filed it? |
|---|---|---|
|   | A: | Yes. |
| … | | |
|   | Q. | The Part III, the information about foreign accounts and trusts is blank? |
|   | A. | Yeah. |
|   | Q. | Did you ask [the CPA] why it was blank before you filed your return? |
|   | A. | No. |
|   | Q. | It didn't cause you any concern? |
|   | A. | No. |
|   | Q. | Why not? |
|   | A. | Because I didn't notice. He should have said no. |
|   | Q. | Did [the CPA] ask you if you had any accounts in a foreign country? |
|   | A. | No. |

*Id.* at 68. However, with his response to plaintiff's motion for summary judgment, Agrawal submitted an affidavit reversing some of this testimony; he now claims that both CPAs asked whether he had foreign accounts; that he told them he did have a foreign account; that the CPAs did not file FBARs on his behalf or report the UBS account on his tax returns; and that he relied on the CPAs' expertise. ECF # 36 at 2-3. Along with this affidavit, Agrawal also filed an errata list amending portions of his deposition testimony, including the portions cited above. Many of these amendments

3

simply change "yes" answers to "no" or vice versa; Agrawal's explanation for these amendments is that he "misspoke." ECF # 37-1 at 11-13.

It is undisputed that in October of 2011, Agrawal's wife completed and signed FBARs for calendar years 2006 through 2009 with respect to the UBS account and submitted those forms to an IRS agent. The Agrawals did not otherwise file the FBAR forms with the Treasury Department.

On April 12, 2016, a delegate of the Secretary of the Treasury assessed a civil penalty against Agrawal for nonwillful failure to file FBARs, under the authority of 31 U.S.C. § 5321(a)(5). The United States seeks judgment in the amount of $46,798.48 as of August 28, 2019, plus penalties, interests and collection costs accrued according to law. Agrawal says that he has paid $45,000 to the U.S. Treasury, but provides no documentary support for that assertion.

## II. DISCUSSION

*a. Unauthorized Sur-Reply*

Agrawal has filed a "response"—i.e., a sur-reply—to the United States reply brief in support of its motion for summary judgment. ECF # 39. Civil Local Rule 56—which governs summary judgment and a copy of which Agrawal received with the United States' motion for summary judgment, see ECF # 30—does not make provision for the filing of a sur-reply. Accordingly, pursuant to Civil Local Rule 7(i)—a copy of which Agrawal also received—Agrawal should have filed a motion requesting leave to file additional paper. Agrawal did not do so, and has not identified any valid reason why his

4

additional argument warrants consideration. Therefore, I will not consider Agrawal's unauthorized filing.[1]

   b. *Summary Judgment*

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

Pursuant to 31 U.S.C. § 5314(a), the Secretary of the Treasury must require residents or citizens of the United States to keep records and/or file reports when the resident or citizen makes a transaction or maintains a relationship with a foreign financial agency. Thus under 31 C.F.R. § 103.24 (2009), which implemented this statute at the time relevant to this case, "each person subject to the jurisdiction of the United States . . . having a financial interest in, or signature or other authority over, a bank, securities or other financial account in a foreign country" was required to file a FBAR for each year the person held the account. Such reports were to be filed "on or before June 30 of each calendar year with respect to foreign financial accounts exceeding

---

[1] A note: Mr. Agrawal has represented himself throughout this litigation. Consistent with his earlier practice, his unauthorized sur-reply is also signed "Ram K. Argrawal, pro se." This document, however, differs substantially in both style and content from Mr. Agrawal's earlier submissions. It contains developed legal argument and properly formatted legal citations; in short, it appears to be the work of a trained and experienced attorney. Mr. Agrawal is warned that if he knowingly makes factual misrepresentations to the court—for example, by claiming to represent himself while in fact employing an attorney to litigate his case—he may expose himself to sanctions under Rule 11 of the Federal Rules of Civil Procedure.

$10,000 maintained during the previous calendar year." 31 C.F.R. § 103.27 (2009). The Secretary of the Treasury may impose a civil money penalty on violators of these provisions, 31 U.S.C. § 5321(a)(5)(A); however, an exception to the statutory penalty exists where the "violation was due to reasonable cause and . . . the amount of the transaction or the balance in the account at the time of the transaction was properly reported," 31 U.S.C. § 5321(a)(5)(B)(ii).

In this case, there's no genuine dispute as to whether Agrawal violated the law when he failed to timely file FBARs regarding the UBS account for tax years 2006-2009. Agrawal does not contest that he is a US citizen; that he had a financial interest in a financial account in a foreign country; that the balance of that account exceeded $10,000 for each of the relevant years; or that he failed to file his FBARs by the June 30 deadline for each of those years. His conduct thus satisfies all the elements required for liability under 31 U.S.C. §§ 5314 and 5321(a)(5)(A). Agrawal argues, however, that his conduct is excused because he relied on the advice of tax professionals, and because he is elderly, unsophisticated about tax law, and speaks English as a second language. The question I must resolve is whether Agrawal has established a question of material fact as to his entitlement to the "reasonable cause" exception under § 5321(a)(5)(B)(ii).

Agrawal's argument is based largely on his and his wife's affidavits, which he filed together with his response to plaintiff's motion for summary judgment. In them, both Agrawal and his wife claim that they relied on tax professionals to advise them and to prepare required financial reports, and that they provided full information about their foreign accounts to these professionals. ECF # 36, ECF # 37. These affidavits directly contradict Agrawal's deposition testimony, in which he stated that he responded "no"

6

when the CPA who prepared his 2008 tax return asked whether he had any foreign bank accounts, and that the CPA who prepared his 2009 return did not discuss foreign accounts with him at all. ECF # 32-17 at 65-68. Although the summary judgment posture of this case requires me to view the evidence in the light most favorable to Agrawal, that does not allow him to walk back his deposition testimony with later-filed contradictory affidavits. "[P]arties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005).[2] I must therefore disregard the affidavits.

For analogous reasons, I disregard Agrawal's deposition errata sheets—which, again, largely seek to replace "no" with "yes" answers, and "yes" with "no" answers, on grounds that Agrawal "misspoke" at his deposition. Though Federal Rule of Civil Procedure 30(e)(1) provides that a deponent may review and submit changes to a deposition transcript provided he or she conforms with certain procedural requirements, the Seventh Circuit has held that this rule does not allow post-deposition changes that contradict the deponent's testimony: "We . . . believe, by analogy to the cases which hold that a subsequent affidavit may not be used to contradict the witness's deposition, that a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000). Agrawal's proposed amendments cannot plausibly be represented as the

---

[2] Another feature of the affidavits reinforces the inference that they were manufactured to gin up an issue of fact: though both affidavits were ostensibly signed and dated April 20, 2019, they both make reference to the United States' motion for summary judgment, which was not filed until August 30, 2019.

correction of an error of transcription. Therefore, I rely on Agrawal's original deposition testimony in considering whether he has established a material issue of fact as to whether there was a "reasonable cause" for his violation of the FBAR reporting requirement.

Neither § 5321 nor its corresponding regulations define "reasonable cause" in the FBAR reporting context, and there's little development in the case law. Sections 6651(a) and 6664(c)(1) of the Internal Revenue Code, however, use and define the term in the tax compliance context, and courts have found those provisions instructive in construing the reasonable cause standard applicable in the FBAR context. *See Jarnagin v. United States*, 134 Fed.Cl. 368, 376 (Fed. Cl. 2017); *Moore v. United States*, 2015 WL 1510007 at *4 (W.D.Was. 2015); *see also Thomas v. UBS AG*, 706 F.3d 846, 851 (7th Cir. 2013)(Seventh Circuit indicating similarity between 31 U.S.C. § 5321(5)(B)(ii) and 26 U.S.C. § 6664(c)). The regulations implementing 26 U.S.C. § 6651 equate the reasonable cause standard with a standard of "ordinary business care and prudence." 26 C.F.R. § 310.6651-1(c)(1). The regulations interpreting 26 U.S.C. § 6664(c)(1) state that the determination whether a taxpayer acted with reasonable cause "is made on a case-by-case basis, taking into account all pertinent facts and circumstances," and further that "generally the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper liability." 26 C.F.R. § 1.6664-4(b)(1).

On the record before me, no reasonable juror could find that Agrawal acted with ordinary business care and prudence, or that he made a reasonable effort to understand his FBAR reporting responsibilities, when he failed to file his FBARs for the years 2006-2009. By his own admission, Agrawal self-prepared his 2006 and 2007 tax

returns; he did not disclose the existence of a foreign financial account on Schedule B despite a direct question on the issue. And according to his deposition testimony, in 2008 and 2009, he did not tell the CPAs preparing his tax return of the existence of the UBS account or question the CPA's decision to leave blank the Schedule B question about foreign bank accounts. A taxpayer acting with ordinary business care, or one making a reasonable effort to understand his responsibilities, would have sought informed advice about the reporting requirements alluded to in Schedule B; seeking such advice would necessarily involve the taxpayer notifying the advisor of the existence of the foreign account. *See Jarnagin*, 134 Fed.Cl. at 378 ("A taxpayer who signs a tax return will not be heard to claim innocence for not having actually read the return, as he or she is charged with constructive knowledge of its contents.")(quoting *United States v. Williams*, 489 Fed.Appx. 655, 659 (4th Cir. 2012)); *see also Richardson v. Comm'r*, 125 F.3d 551, 558 (7th Cir. 1997)(Taxpayer could not establish reasonable cause for underpayment of taxes on the basis of reliance on an expert where the record contained "no evidence that a professional, *after being informed of the circumstances*, advised her that she did not have taxable income in the relevant years.")(emphasis supplied).

Agrawal's arguments that he is elderly, speaks English as a second language, and has an inexpert understanding of tax reporting requirements do not sway my reasonable cause analysis. By his own admission, Agrawal has sufficient mental acuity technical facility with the English language to work as a math teacher and as a geophysicist—and, for that matter, to represent himself in this litigation. He had sufficient financial savvy to draft a letter to a UBS requesting that the funds in the

account be invested in non-taxable, non-US SEC funds. ECF # 32-17 at 28. The record therefore does not support Agrawal's argument that his naivety excuses him from exercising ordinary business care by seeking advice regarding his obligation to file an FBAR. *Compare Jarnagin,* 134 Fed. Cl at 378. I conclude, therefore, that Agrawal has not established an issue of material fact as to whether his failure to file his FBARs was due to a reasonable cause. The United States is entitled have the penalties it has assessed against Agrawal reduced to judgment.

## III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the United States' motion for summary judgment (ECF # 30) is **GRANTED**. The Clerk of Court shall enter judgment against defendant Agrawal in the amount of $46,798.48, plus statutory additions that have accrued according to law.

Dated at Milwaukee, Wisconsin, this 9th day of December, 2019.

s/Lynn Adelman
LYNN ADELMAN
District Judge
